# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | |
|---|---|
| In re: | |
| TROY ATSUMU PARKINS and KERRY ANNE PEARCE, | Case No. 10-12500-RGM (Chapter 7) |
| Debtors. | |
| In re: | |
| DONG KWON CHOI, | Case No. 10-10675-RGM (Chapter 7) |
| Debtor. | |
| In re: | |
| MAJID ATASH SOBH, | Case No. 05-13114-RGM (Chapter 7) |
| Debtor. | |
| In re: | |
| BRANDON J. MILLER, | Case No. 09-19709-RGM (Chapter 7) |
| Debtor. | |
| In re: | |
| HARRY WILLIAM BYRNE, | Case No. 09-19801-RGM (Chapter 7) |
| Debtor. | |
| In re: | |
| MOHAMED T. KAMARA and FATMATA T. KAMARA, | Case No. 10-11592-RGM (Chapter 7) |
| Debtors. | |

| | |
|---|---|
| In re: | |
| ILONA K. STEPHENSON, | Case No. 09-16041-RGM |
| | (Chapter 7) |
| Debtor. | |
| In re: | |
| BONNIE L. KEYA, | Case No. 10-16769-RGM |
| | (Chapter 13) |
| Debtor. | |

## <u>MEMORANDUM OPINION</u>

These eight cases are before the court on the chapter 7 trustee's applications for compensation of his attorneys. They were routine cases not requiring extensive legal work. What catches the eye in these cases is the size of the requested attorney's fees.[1] They all raise the same

---

[1]In *Stephenson,* the trustee sold a house in Hawaii. His attorney spent about 58 hours, incurring fees of $17,677.50. The trustee expended an additional 20.2 hours, most relating to the sale of the property. In *Miller,* the trustee sold a car and collected a tax refund. His attorney spent about 30 hours, incurring fees of $7,907.50. In *Choi,* the trustee collected a tax refund. His attorney spent about 12 hours, incurring fees of $3,560.00. In *Kamara,* the trustee received the value of the equity in a car from the debtor in lieu of selling the car. His attorney spent 15.5 hours, incurring fees of $4,057.00. In *Parkins,* the trustee collected a tax refund and the cash surrender value of an insurance policy. His attorney spent six hours, incurring fees of $1,717.50. In *Keya,* the trustee's objection to the debtor's claim of exemption of a spendthrift trust resulted in the debtor converting her case to chapter 13. In several cases, the trustee requested less than these amounts, voluntarily reducing the fees requested.

This chapter 7 trustee, an experienced member of the United States Trustee's panel of trustees, manages his trustee practice by delegating most of the work to attorneys in his law firm. At the hearing on the applications for compensation, his attorney described the trustee's management of a typical case. After the first meeting of creditors, the trustee meets with his legal assistant and identifies the potential asset cases. He assigns the potential asset cases to an attorney in his office to perform the necessary legal work. His legal assistant files no-asset reports in the remaining cases. After an asset case is fully administered, the legal assistant prepares the appropriate reports which the trustee reviews and approves. The assigned attorney appears in court on the hearing of the approval of the trustee's final report and applications for compensation. The trustee holds regular meetings with his legal assistant and the attorneys to whom the legal work is assigned. He monitors the status of the cases at these meetings and at other times as necessary.

The trustee's time records, although incomplete, illustrate his hands-off, delegation management style. Most of his time entries refer to "BMS" or conferences, apparently with his legal assistant and the attorneys in his office. The conferees are not identified. At the hearing on the fee applications, the trustee's attorney explained that BMS is a bankruptcy management system supplied by the trustee's bank. It enables him to manage his bank accounts from his office, to account for property of the estate, to record transactions, and to generate necessary reports. There are several models that trustees follow in the management of their trustee practices. A trustee is free to choose the model best suited to the trustee's circumstances and that effectuates the objectives of the Bankruptcy Code.

issues: the proper billing for attorneys in the trustee's law firm, that is, the proper division between trustee work and attorney work; and, the appropriate hourly rate and number of hours expended by the trustee's attorneys. All require adjustment. The applications for compensation will be allowed in reduced amounts.[2]

The first problem with the fee applications is the allocation of work the attorneys performed between the trustee's account and the estate's account, that is, the work that should be included in the trustee's fee as opposed to the attorney's fee which is paid separately and in addition to the trustee's fee. The second problem is establishing the proper billing rate and the proper number of hours so that the lodestar calculation can be made. For the most part, the attorneys that the trustee assigned the cases to were newer associates. In general, the requested hourly rates are those commanded by more experienced bankruptcy attorneys. In general, the hours expended were excessive.

## The Division Between Trustee's Fees and Attorney's Fees

In evaluating a fee application for a trustee's attorney, one element of the review is the allocation of time between the trustee and the attorney. *See In re Computer Learning Centers, Inc.,* 285 B.R. 191, 208-210 (Bankr.E.D.Va.2002). A trustee may not employ professionals to perform routine trustee duties at the expense of the estate. *In re J.W. Knapp Company,* 930 F.2d 386, 388 (4th Cir.1991); *In re King,* 88 B.R. 768, 770 (Bankr.E.D.Va.1988). Chief Judge Bostetter stated:

---

[2]There were no objections to the applications for compensation, but the court has an independent duty to review them. Bankruptcy Code §330(a)(2); *In re Laines,* 2007 WL 2287905 (Bankr.E.D.Va.2007); *In re Market Resources Development Corp.,* 320 B.R. 841, 845 (Bankr.E.D.Va.2004); *In re Franklin,* 210 B.R. 560, 562 (Bankr.N.D.Ill.1997) ("Critical review of uncontested motions, moreover, is consistent with a basic legal principle – that courts are not required to grant a request for relief simply because the request is unopposed."); *In re Hobbs,* 108 B.R. 93 (Bankr.D.Md.1989) (independent review of trustee's final report); *In re King,* 88 B.R. 768, 772 (Bankr.E.D.Va. 1988).

[I]t is well settled that courts may not compensate an attorney appointed to represent the trustee for services statutorily required of the trustee. .    .    . Trustees must perform all ministerial and administrative duties of the estate, .    .    . while attorneys appointed to represent the trustee must exercise professional legal skills and expertise beyond the ordinary knowledge and skill of the trustee to receive compensation. .    . Accordingly, attorneys have been denied compensation for: (1) services relating to the sale of the debtor's assets, the collection of accounts due, the examination of the debtor's papers, .    .    .; (2) the preparation of notices and advertisements for the sale of the debtor's assets, and license renewals, .    .    .; (3) entries relating to routine telephone calls and correspondence with information seekers, .    .    .; (4) charges for the reduction of the estate to money, the payment of routine bills – including taxes, the arranging of insurance coverage for the estate, and the examination of the debtor's books and records, .    .    .; (5) and the arrangement for the sale of the properties of the debtor's estate, .    .    .

In re King., 88 B.R. at 770 (citations omitted).

In *In re Tan Lie Hung & Mountain States Invs., LLC,* 2007 WL 3132650, at *2

(Bankr.D.Or.2007), the court disallowed attorney compensation

for services in the following general categories: 1) preparing notices/motions to sell real property; 2) drafting applications to employ professionals; 3) drafting liquidation analyses; 4) corresponding with the U.S. Trustee's office re: U.S. Trustee fees; 5) calculating and corresponding re: the amount and disbursement of claims; 5) *[sic]* reviewing financial information for inclusion in an interim report of estate assets (filed in conjunction with fee applications); 6) corresponding with various parties regarding the 2004 tax return; and 7) conferences with the estate's realtor re: keeping buyers "on track" and the timing of closing.

*Id.* The court explained:

Under § 328(b), compensation to a trustee who is also employed as the estate's attorney, for performance of any of the trustee's duties that are generally performed without an attorney's assistance, will be disallowed. As a corollary, numerous courts have examined the role of a trustee's outside counsel in this context. As a general proposition, a trustee will be held to the standard of a sophisticated pro se litigant, and will be expected to handle routine administrative matters without the need of counsel. *See, e.g., In re King,* 88 B.R. 768, 770-71 (Bankr.E.D.Va.1988) (listing a trustee's typical administrative tasks for which counsel may in general, not be compensated). "[A] case trustee may only employ professionals for tasks that require special expertise beyond that expected of an ordinary trustee."*Ferrette & Slater* [*v. U.S. Trustee (In re Garcia),* 335 B.R. 717 (9th Cir.B.A.P.2005)] at 727. For instance, applications for employment, *Id.* at 726, as well as simple sale notices/motions, *In*

4

*Re McKenna,* 93 B.R. 238, 241 (Bankr.E.D.Cal.1988), generally do not require counsel.  In contrast, services performed in an adversary proceeding or a contested matter where the trustee is required to appear and defend, have been held to be proper services for trustee's counsel. *In re Perkins,* 244 B.R. 835, 842 (Bankr.D.Mt .2000).  Preparation of legal documents such as a stipulation and release have also been held to be compensable legal services, even if the documents are not complex. *Ferrette & Slater, supra* at 728.

*Id.*

## Determination of Attorney's Fees

The second element of the review of a fee application is determining the reasonable fee.

Compensation of attorneys is governed by §330 of the Bankruptcy Code which provides that the

court may award reasonable compensation for actual, necessary services rendered by an attorney and

reimbursement for actual, necessary expenses.  Section 330(a)(3) states:

In determining the amount of reasonable compensation to be awarded to an [attorney], the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

(A)  the time spent on such services;

(B)  the rates charged for such services;

(C)  whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D)  whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E)  with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)  whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3).

Sections 330(a)(3)(A) and (B) are, essentially, the lodestar factors.  *Perdue v. Kenny A.,*

__U.S.__, 130 S.Ct. 1662, 1672 (2010).  The lodestar calculation is not a blank check which

5

counsel may fill in with any amount of time expended and any hourly rate.  The time expended must

be reasonable and the hourly rate must reflect the prevailing market rate in the relevant community

for attorneys of similar experience and expertise.   11 U.S.C. §330(a)(3)(F) ("compensation is

reasonable based on the customary compensation charged by comparably skilled practitioners");

*Perdue v. Kenny A.,* 130 S.Ct. at 1672.  In *In re Computer Learning Centers, Inc.,*  the court noted

that:

> A central factor in determining an appropriate award of compensation is 'the
> prevailing market rates in the relevant community'. *Blum* [*v. Stenson*, 465 U.S.886]
> at 895, 104 S.Ct. [1541] at 1547; *Daly* [*v. Hill*], 790 F.2d [1071] at 1077, 1079-81.
> The prevailing market rate may be more or less than an individual attorney's hourly
> rate. *In re Narragansett Clothing Co.,* 210 B.R. [493] at 499. .   .   . While the
> individual attorney's hourly rate is a factor to be considered in establishing the
> prevailing market rate, it is but one datum in the analysis.

*In re Computer Learning Centers, Inc.,* 285 B.R. at 227.  Similarly, the court in *In re S.T.N.*

*Enterprises, Inc.,* 70 B.R. 823 (Bankr.D.Vt.1987) stated that

> The phrase "cost of comparable services" does not mean the usual hourly billing rate
> of the applicant but means the fee customarily charged outside bankruptcy in the
> local community by someone who possesses similar skill, experience, expertise,
> stature, and reputation.

*Id.* at 843.  The court in *In re Shades of Beauty, Inc.,* 56 B.R. 946 (Bankr.E.D.N.Y.1986) stated:

> The term "cost of comparable services" does not mean the usual hourly billing rate
> of the applicant. If it did, an attorney could command from the estate any desired
> hourly rate merely by adopting that rate as his "usual and customary rate." The term
> "cost of comparable services" means that fee which is customarily charged in the
> local community by someone who possesses similar skill, experience, expertise,
> stature and reputation who is faced with similarly novel and complex issues and who
> procures comparable results.

*Id.* at 951.

Some of the factors in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-719

(5th Cir. 1974) assist in establishing the hourly rate and the reasonableness of the hours expended.

One factor that may be considered in establishing the hourly rate is the years since admission to the bar. *See Perdue v. Kenny A.,* 130 S.Ct. at 1674.

Section 330 makes clear that there are other considerations than time expended and hourly rate. The services must be necessary to the administration of the estate and beneficial at the time they were performed. 11 U.S.C. §330(a)(3)(C). The lodestar fee may be adjusted in light to the timeliness of the services rendered.

11 U.S.C. §330(a)(3)(D).

With these matters in mind, the fee applications in the particular cases will be considered.

### *In re Parkins,* **Case No. 10-12500**

The principal issue presented by the attorney's fee application in this case is the division between trustee work and attorney work. This case was about as straight-forward an administration as a chapter 7 trustee can have. The debtors scheduled five items of interest to a trustee: a cash management account with a value of $781.00; two State Farm life insurance policies with values of $3,182.02 and $6,155.64; and two tax refunds, the federal with an estimated value of $5,000.00 and the state with an estimated value of $500.00. The trustee's Cash Receipts and Disbursements Record states that the debtors turned over the tax refunds at the May 10, 2010 first meeting of creditors. The refunds were larger than scheduled, $12,853.00 and $3,661.00 for the federal and state, respectively. On July 2, 2010, the cash surrender value of one State Farm life insurance policy and the non-exempt portion of the cash management account were turned over. On July 27, 2010, the second State Farm life insurance cash surrender value was turned-over. The cash surrender payments were a bit more than scheduled. The cash management account was actually $2,580.92

7

which was more than the amount scheduled.  Except for a portion of the cash management account, none of the assets were claimed exempt.  No objection to a claim of exemption was necessary or was made.  The trustee did not file any pleadings with the court to effect the turn-overs.

The trustee first requested $1,717.50 for attorney's fees.  After the court requested additional information, the trustee amended the application to request $1,254.00.  The amended application contains twelve time entries from June 3, 2010 through July 26, 2010 by an associate at the trustee's law firm.  The twelve entries total 4.4 hours, about 2.8 hours to review the bankruptcy papers to determine whether an objection to a claim of exemption should be filed; about 0.8 hours to review and update notes on the status of the case; and about 0.8 hours for communications (principally telephone calls) with debtors' counsel.

All of the attorney's time is for trustee work.  Examining claims of exemptions is a trustee function.  A trustee reviews the claims of exemption in preparation for and in conjunction with the first meeting of creditors to determine whether there may be non-exempt property to administer.  That task is within the normal competency of a trustee.  This case was particularly easy.  Schedule C, Property Claimed as Exempt, is clear.  None of the assets turned over was claimed exempt except the cash management account which was claimed partially exempt.

The telephone calls to the debtors' counsel in this case are also trustee work.  They are routine actions that a trustee must undertake to collect property of the estate. *In re King,* 88 B.R. at 770.  No legal proceeding was necessary to enforce the trustee's rights to the property and none was undertaken.  Similarly, the attorney's time entries for July 2, 2010 and July 26, 2010, which state that the trustee's attorney read letters from debtors' counsel are so closely related to the deposit of money turned over that the court infers that the letters were cover letters transmitting the funds.  The

receipt of estate funds and depositing them into the estate's bank account are trustee functions, not attorney functions.

While a trustee may, as this trustee did, delegate these duties to his staff, compensation is included in the trustee's fee. Additional compensation as attorney's fees is not available even when the staff member who does the actual work is a lawyer.

The application for attorney's fees will be denied.


### *In re Choi,* Case No. 10-10675-RGM

The principal issue in this case is whether the compensation sought as attorney's fees is work that falls within the trustee's column or the attorney's column. The administration of this case was fairly basic. The case was filed on January 28, 2010, and the first meeting was held on March 1, 2010. The debtor scheduled potential tax refunds with the value given as "unknown." This situation is fairly common for cases filed early in the year. Many debtors who file early in the year have not prepared their tax returns for the prior year. They schedule potential tax refunds on Schedule B, Personal Property, and claim the potential tax refunds as exempt on Schedule C, Property Claimed as Exempt. In this case, the debtor did not claim the potential tax refunds as exempt. The trustee concluded at the first meeting of creditors that there would likely be a tax refund because two days after the first meeting of creditors the trustee requested that the clerk mail a notice advising creditors that there may be assets available for distribution and setting a bar date for filing proofs of claims. The trustee received the tax refund of $4,620.00 on May 12, 2010.

The debtor never claimed the tax refunds as exempt, but did amend Schedule E, Creditors Holding Unsecured Priority Claims, by adding income taxes due to the Commonwealth of Virginia

and filing a proof of claim on behalf of the Commonwealth.  The state of Maryland, although not

scheduled, filed a proof of claim for unpaid sales and use taxes.  These are the only two creditors

who will receive distributions.  Neither debt appears to be dischargeable.  11 U.S.C. §§523(a)(1),

507(a)(8)(A) and (C).

Although the debtor did not claim the tax refund exempt on Schedule C, the trustee's

attorney filed an objection to the debtor's claim of exemption.[3]  The notice established the deadline

for filing an opposition to the objection, but did not place the objection on the court's docket.  No

opposition was filed and an order sustaining the objection was entered without a court appearance.

The trustee requested $1,050.00 (reduced from $3,560.00) for attorney's fees and $15.33 for costs.

The first issue is whether the time the trustee's attorney expended was properly attorney time

or trustee time.  Counsel read a letter from debtor's counsel about the tax refund and the available

exemption; reviewed the homestead deed; and called debtor's counsel.  Debtor's counsel was not

initially available so counsel left a voice message and spoke with debtor's counsel the following day.

Counsel then again reviewed the homestead deed and the case notes.  The following day, counsel

drafted the objection to the claim of exemption.  About six weeks later, counsel received the non-

exempt $4,620.00 tax refund.  Almost two weeks after receiving the tax refund, counsel drafted an

order sustaining the objection.  A legal assistant's time was also billed.  She reviewed the case notes,

reviewed the file, and read debtor's counsel's letter the same day that the trustee's attorney did.  She

---

[3]The trustee's counsel explained in the objection to claim of exemptions that the debtor included a $1.00 exemption on the debtor's homestead deed for tax refunds and that the trustee was objecting to the "tax refund to the extent the Debtor seeks to exempt value in the tax refund over and above the Debtor's maximum allowed" homestead exemption.  The objection continues that, after discussing the matter with debtor's counsel, it was understood that the debtor did not intend to exempt more than the maximum allowable homestead exemption.  "[T]he trustee files this objection out of an abundance of caution."  Trustee's Objection to Exemptions ¶¶4-5. (Docket Entry 14).  In order for a debtor to claim the homestead exemption in Virginia, the debtor must do two things: timely file a homestead deed in the appropriate state circuit court and claim the exemption on Schedule C.  In this case, the debtor claimed $1.00 on the homestead deed, but did not claim the tax refunds exempt on Schedule C.

10

also reviewed the objection to the claim of exemptions prepared by counsel, prepared the notice, and filed them.

Reviewing the schedules and statement of affairs to determine whether a claim of exemptions appears to be appropriate, communicating with debtor's counsel, and deciding whether an objection should be filed are normally trustee functions. The trustee may delegate these actions, but may not charge them to the estate as attorney's fees.

The attorney's time expended drafting the objection to the non-existent claim of exemptions, however brief it may have been, was unnecessary. *Cf. In re Parkins, supra.* The debtor never claimed the tax refund as exempt. 11 U.S.C. §522(*l*) and Fed.R.Bankr.P. 4003(a). There was nothing for the trustee to object to. A trustee may object to a debtor's claim of exemption for thirty days after Schedule C is amended. No legal action was required until then. *Williams v. Peyton (In re Williams)*, 104 F.3d 688, 690 (4th Cir.1997). There are no indications that a precautionary objection was appropriate. To the contrary, in this case, the debtor's actions indicated that no additional action was necessary. Debtor's counsel discussed the matter with the trustee's counsel, agreed that he would not claim more than he was entitled to claim, and amended Schedule E, Creditors Holding Unsecured Nonpriority Claims, to add a non-dischargeable priority claim that would be paid by the trustee. He then filed a proof of claim on behalf of that creditor. Schedule C shows that the debtor had largely exhausted his homestead exemption, having claimed $5,407 of a maximum of $6,000. The debtor's strategy was to direct the payment of the non-exempt tax refund to a non-dischargeable priority debt. Had the debtor amended Schedule C to claim a homestead exemption that exceeded the maximum amount permissible, the trustee had thirty days from the

11

amendment to object.  In this case, the trustee's attorney's objection to the claim of exemption was unnecessary.

The application for counsel fees will be denied.

### *In re Sobh,* Case No. 05-13114-RGM

The principal question presented by the attorney's fee application in this case is the attorney's reasonable hourly rate.  The trustee filed a no-asset report on October 14, 2005.  In early 2009, the trustee was advised that the debtor had failed to schedule an asset that was the subject matter of litigation in state court.  He re-opened the case to administer the unscheduled asset.  He reached a settlement with the debtor in which the debtor paid the estate $12,000.00 for the asset. The settlement was duly noticed and approved by the court.

The work was performed by an attorney and a legal assistant in the trustee's law firm.  After the first hearing on the application for compensation, the firm submitted an amended application that reduced the requested fees from $3,787.00 to $3,285.00.  The amended application did not address the attorney's reasonable hourly rate or the legal assistant's actions.

The lodestar analysis multiplies the attorney's reasonable hourly rate by the reasonable number of hours that the task required.  Attorneys in this geographic area with comparable experience, both bankruptcy and non-bankruptcy experience, have lower hourly rates than that requested by the trustee.  Experience and hours expended on a matter are usually inversely proportional, that is, with greater experience, routine tasks are performed more quickly.  The time records in this case illustrate this relationship.  The associate expended 11.2 hours analyzing the problem, negotiating the settlement, and preparing the legal papers incident to the matter (the motion

for approval of the settlement, the notice of the hearing, and the closing papers).  Of this time, counsel spent 2.5 hours reaching the settlement and the remaining 8.5 hours preparing the papers to effectuate it.  There was one uncontested court appearance.  The attorney spent 1.5 hours preparing for the court appearance and about 1.5 hours at court.  The motion to approve the settlement was in the trustee's standard form and was not complicated.  The other documents should not have been particularly time consuming to prepare.

The hourly rate requested is that of an attorney with more experience.  A more experienced attorney would not have expended, for example, 1.5 hours preparing for a court appearance for which he had prepared all the papers, and in which no objections had been filed.  A less experienced attorney properly takes more time preparing for the same court appearance.  The difference in experience should be reflected in the hourly rate.  In this court, the prevailing rate for attorneys with similar experience  is $250.00 an hour.

The legal assistant's time will be disallowed.  The time records show that both the attorney and the legal assistant worked on the motion to approve the settlement and the notice of the hearing. It is not clear who did what, but there was unnecessary duplication of work.[4]  If the attorney prepared the motion and notice, the legal assistant had no role and her time was unnecessary.  If the legal assistant prepared the motion at the direction of the attorney, the attorney should have reviewed it.  The time expended reflects more than a mere review.

Counsel requested a reimbursement of $23.23 for local transportation, that is, mileage. Local mileage is not a reimbursable expense.  It is part of the attorney's overhead and will be disallowed.

---

[4]The legal assistant  filed the motion and notice of hearing on the court's Electronic Case Filing system.  This work was secretarial and is part of the trustee's overhead.

13

The amended application for compensation will be allowed in the amount of $2,750.00 for attorney's fees and $90.13.[5]

### *In re Miller,* Case No. 09-19709

The attorney's fee application in the *Miller* case presents two issues: The division between trustee work and attorney work and the proper hourly rate of the attorney. The trustee sold a car and received a tax refund from the debtor. The car was sold for $10,650.00. The tax refund was $10,270.80. The amended application for compensation requested $5,899.00, about $4,660.00 related to the sale of the car and $1,239.00 related to the turnover of the tax refund.[6]

All of the time expended with respect to the collection of the tax return was trustee time, not attorney time. Counsel first reviewed the debtor's schedules to determine if the tax refund was claimed exempt and correctly concluded that no action was necessary at that time to object to the claim of exemption of the tax refund.[7] *Cf. In re Choi, supra.* All of the time after that was spent in

---

[5]The amount represents 11.0 hours at $250.00 an hour.

[6]The amended fee application reduced the requested fees from $6,909.00 by eliminating time requested by two other attorney's in the trustee's office, one a partner and the other an associate. The first application stated that the law firm had voluntarily reduced its requested fees from $7,907.50.

[7]The debtor scheduled a potential tax refund of $2,000.00 and claimed $1.00 exempt as part of his homestead. His maximum homestead exemption was $6,000.00. He claimed $5,700.00 of this amount for the otherwise non-exempt portion of a car. He also claimed $1.00 exempt for each of various other items, including the tax refund. Notably, he claimed $1.00 to protect $547.00 in non-exempt wages. (Three-quarters of the accrued wages of $2,188.94 was otherwise exempt.)

This is a standard protective practice among the bar. In Virginia, in order to claim the homestead exemption, the debtor must schedule the exemption on Schedule C, Property Claimed as Exempt, and file a homestead deed in the clerk's office of the appropriate circuit court within five days after the first meeting of creditors. Va.Code (1950) §34-17. Although there is no time limit for amending Schedule C, a timely filed homestead deed may only be amended after the deadline by increasing the amount claimed exempt. A new asset may not be added. Many attorney's protectively list assets on the homestead deed at $1.00 when the value is unknown or uncertain so that they may later amend the amount up, if necessary. This is particularly important when dealing with a potential tax refund before the tax return is filed, as was the case here. The amended amounts may not exceed the maximum allowable homestead exemption.

discussion with debtor's counsel to collect the tax refund.  The time records refer to a settlement of the matter.  It appears that the debtor spent some of the tax refund before turning it over to the trustee.  The "settlement" was, apparently, an informal agreement on when the tax refund would be paid to the trustee.  The trustee's attorney first telephoned debtor's counsel on April 2, 2010.  The first installment, $8,000.00 of $10,270.80, was received on April 23, 2010.  The second installment, $1,000.00, was received on May 4, 2010.  The third and final installment, $1,270.80, was received on June 7, 2010.  None of counsel's time went beyond what a chapter 7 trustee would  normally do in his capacity as trustee.  While the trustee may have someone else in his office make these telephone calls and follow-up on the collection of property of the estate, those duties, when delegated, remain trustee functions and may not be separately compensated as attorney's fees.  The attorney's fees requested with respect to the turnover of the tax refund will be denied.

That leaves $4,660.00 of the application for compensation that relates to the sale of a car.  Here, it is apparent that the trustee's attorney is new to bankruptcy practice and learned a lot from her involvement in this case, particularly from the sale of the car.   The attorney recorded 14 conferences with the trustee, another partner in the firm who frequently does the trustee's work, an associate who had bankruptcy experience, and a legal assistant.  The legal assistant reviewed the attorney's drafts as did the other attorneys.

The lodestar method can account for additional hours a younger associate expends on a case with a lower hourly rate, but in this case, the hours (even at a lower rate) were excessive.  They were, essentially, a part of counsel's legal education and should not be included.  The hourly rate sought, $295.00, is comparable to bankruptcy practitioners performing chapter 7 bankruptcy work in this court of 10 to 15 years' experience.  The reasonable hourly rate is $225.00 and five hours is

a reasonable number of hours to have expended on the case.[8]  Compensation will be allowed in the amount of $1,125.00 for attorney's fees and $129.03 for expenses.[9]

### *In re Byrne,* Case No. 09-19801-RGM

In this case, the trustee received $13,000 from the debtor for the non-exempt value of a Universal Whole Life Insurance policy.  The debtor listed the policy on Schedule B, Personal Property, with a value of $20,000 and claimed it exempt on Schedule C, Property Claimed as Exempt, in the same amount.  He asserted that it was exempt under Code of Virginia (1950) §38.2-3339.  The first meeting of creditors was held on January 22, 2010.  The trustee requested that an asset notice be issued on January 27, 2010.  The trustee received $13,000 from the debtor on February 17, 2010.  That day, the trustee's partner spoke with the associate who worked on the case regarding an objection to the claim of exemption.  The associate prepared an objection to the claim of exemptions which was noticed.  There was no response to the objection and an order allowing the claim of exemption to the extent  of $7,000 was entered by the court.  The remaining $13,000 of the policy was not exempt.  It had been turned over to the trustee on February 17, 2010.

It is not clear from the billing records, the Trustee's Final Report, or the court's docket what really happened in this case.  It is clear that the trustee immediately recognized the case as a potential asset case and that there  were discussions between the trustee or his office and the debtor, between January 22, 2010 (the date of the first meeting of creditors) and February 4, 2010.  This can be inferred from the trustee's partner's February 4, 2010 time entry when he reviewed an e-mail

---

[8]There are two associates in these cases, one with more experience than the other.  The hourly rate for the newer associate should be $225 and for the more experienced associate, $250.

[9]The $11.00 expense for local transportation is disallowed.

from debtor's counsel concerning "debtor's delay in forwarding cash surrender value of life insurance to Trustee." The following day, he met with the trustee and discussed the debtor's failure to turnover the cash surrender value of the life insurance policy. He telephoned debtor's counsel and left a voice mail with respect to the turnover request. On February 9, 2010, he sent an e-mail to debtor's counsel concerning the life insurance and the need for a deed to real property owned by the debtor. He reviewed the deeds on February 10, 2010. On February 17, 2010, the trustee received $17,000 of the $20,000 cash surrender value scheduled by the debtor. After the money was turned over to the trustee, he asked an associate to prepare an objection to the claim of exemptions which she did.

The record is not clear whether this was an objection to a claim of exemption or a compromise of a disputed claim of exemption for the value of the life insurance policy. The trustee was properly suspicious of the claim of exemption because Code of Virginia (1950) §38.2-3339 exempts only group life insurance policies. The schedules suggest that the life insurance policy in question was not a group life insurance policy. There is no dollar limitation on the claim of exemptions in Code of Virginia (1950) §38.2-3339. Here, the trustee did not receive the amount scheduled for the life insurance policy. He received $13,000 and the debtor received the balance, $7,000. If the life insurance policy was exempt under §38.2-3339, it would be expected that the trustee would receive nothing. If it was not exempt under §38.2-3339, it would be expected that the trustee – absent another basis for the claim of exemption or a dispute over the applicability of the claim of exemption – would receive it all. Apparently, there was an agreement between the trustee and the debtor's counsel as to how much would be paid to the trustee and how much would be retained by the debtor. It is possible that there was another exemption involved. But, if so, it was

17

not scheduled on Schedule C and is not apparent from the record.  The actions taken here have the appearance  of a compromise, yet there was no motion to approve a compromise.

While there may be a simple explanation, the review of the final report in this case leaves an unanswered question.  The report will not be approved at this time.  It will be placed on the docket so that the trustee may address the matter further.

### *In re Kamara,* Case No. 10-11592-RGM

The trustee administered a single asset, the debtors' automobile.  He noted at the first meeting of creditors that the debtor had listed a vehicle with a value of $20,000, but claimed exempt only $1.  The vehicle was unencumbered.  The trustee and the debtors agreed to resolve the matter by the debtors paying the trustee $20,000 for the equity in the vehicle.  The trustee's attorney drafted a motion to approve the settlement and appeared in court.  There was no opposition to the motion.

The trustee requests compensation for his attorneys of $4,057 in fees and $7.82 for expenses. The trustee's attorney's time records show that three attorneys and two legal assistants participated in this case.  After the first hearing on the application for compensation, the trustee filed an amended application for compensation reducing the requested compensation to $1,968.

The final fee application contained time for two attorneys, one of whom billed at $300 an hour and the other at $285 an hour.  Again, the amount of time expended to prepare the motion to approve a settlement and appear in court was excessive.  For example, one associate prepared a summary of the motion and an outline of the settlement for the second associate who appeared in court on the motion.  The second associate spent additional time preparing for the hearing.

Together, the two attorneys spent 1.1 hours preparing for an uncontested hearing that lasted no more than five minutes. It is necessary to be prepared, however, the amount of time it took to draft the documents and prepare for the hearing was too much. The hourly rate requested for this level of experience is too high. It is an hourly rate that more experienced bankruptcy professionals are charging in this court. The appropriate fee to be allowed for the work in this case is $500. The reasonable hourly rate for the attorney is $250.00 and two hours is the reasonable amount of time that should have been expended on the case. The court notes that the vehicle was not sold. There were no applications to employ or compensate an auctioneer.[10]

### *In re Stephenson,* Case No. 09-16041-RGM

In the *Stephenson* case, the trustee sold property located in Hawaii. His application for compensation states that he voluntarily reduced the requested trustee's fee to $2,500 and the law firm's fee from $17,677.50 to $5,107.50. The net proceeds of sale was $15,731.[11] The attorney's time records do not include any of the time that the law firm, through its business judgment, determined not to charge. The time records only cover the $5,107.50 for which the firm seeks compensation.

---

[10]The court notes that the trustee requests expenses of $6.44 for local transportation. This is to reimburse the associate for mileage to and from court and is not an allowable expense.

[11]The trustee anticipated that the sale would net $43,878.26 less customary costs of sale. The sales price was $535,000.00. The trustee's March 9, 2009 sales motion stated that the secured claim was $459,021.74 as evidenced by the proof of claim filed by the lender and that the sales commission would be $32,100.00 The proof of claim was filed on August 14, 2009. It showed a claim of $455,641.46 and an arrearage of $2,556.32. This case was filed as a chapter 13 case on July 29, 2009 and converted to chapter 7 on August 27, 2009. The motion for relief from stay filed on September 9, 2009, stated that the pay-off of the mortgage was $459,021.74 as of September 4, 2009. The motion to approve the sale was filed on March 9, 2010, and used the same pay-off amount. The closing took place on May 14, 2010, at which time the payoff was $482,501.75. *See* Trustee's Report of Sale, Exhibit A, HUD-1 Settlement Statement. (Docket Entry 69).

The difficulty with the attorney's time is that most of it is trustee time. The trustee's time records reflect that he devoted a significant amount of time to the contract proposals, the negotiations, and the settlement. His attorney also devoted a lot of time to these matters. She had telephone conversations with the debtor's counsel and the real estate agents in Hawaii. She had e-mail correspondence with the realtor. She followed the progress of the contract. She reviewed the offers and the counter-offers. She reviewed an offer for $525,000 and analyzed it. In short, she largely performed trustee's duties in selling the property. All of this is trustee work, not attorney work. A trustee should have sufficient competency to evaluate real estate contracts and negotiate them, and in fact, the trustees in this division have that experience and competency. *In re King,* 88 B.R. at 770. Unless there is an unusual legal matter, the negotiation of a sale of residential real estate through a real estate agent is something that a trustee should accomplish himself.

The trustee's attorney did respond to the motion for relief from stay and prepared pleadings to obtain the employment of the real estate agent and approval of the sale. In considering the distinction between trustee work and attorney work, the application for compensation will be approved in the amount of $1,650.00.[12]

The trustee's attorney requested expenses of $492.90. Of this amount, $46.72 is for local transportation which is not allowed. The trustee's attorney's fees will be allowed in the amount of $1,650.00 and expenses of $446.18.

### *In re Keya,* Case No. 10-16769-RGM

---

[12]This reflects 5.8 hours at an hourly rate for the trustee's associate of $250.00; 0.4 hours at $350.00 for the trustee's partner; and 0.8 hours at $75.00 for the trustee's legal assistant. The court does not know what time was deleted from the bill and as such cannot take the voluntary reduction from $17,677.50 to the proposed $5,107.50 into account.

The last case is in a different posture than the other seven.  The debtor converted her chapter 7 case to a chapter 13 case after the trustee properly objected to a claim of exemptions.  After conversion, the chapter 7 trustee's attorney filed a fee application for time attorneys in the trustee's law firm expended in the chapter 7 case.  The application for compensation requested $2,097.00 in fees and $3.15 in expenses.  Two attorneys and one legal assistant billed time to the case.  The trustee's partner billed 1.1 hours and the trustee's associate billed 5.6 hours.

The debtor claimed her interest in a testamentary trust established by her great-grandfather as an exempt spendthrift trust.  The will was executed on October 16, 1919.  The trust provisions, while brief, are clear.  There is no spendthrift provision.  The trustee is given the power to sell, invest, and reinvest the trust corpus and is to "pay said net income to [the debtor and her sibling] for 21 years [after the death of their mother, the testator's granddaughter] .  .  . and then to turn [the trust corpus] over to [the debtor and her sibling], share and share alike."  The debtor's mother died about seven years ago.  The trust has about 14 years to run before the trust corpus is distributed.

The associate researched various issues and prepared the objection to the claim of exemptions and the order sustaining the objection.  A legal assistant prepared the notice of the objection.  Most of the time was spent researching the requirements for a valid spendthrift trust and whether the payment of the debtor's remainder interest could be accelerated.

The principal issue is the associate's hourly rate.  The rate should be $225.00 which is reflective of attorneys of comparable experience both in bankruptcy and non-bankruptcy matters.  While the hours expended are more than a more experienced attorney would have expended, the adjustment to the hourly rate, in this instance, is the only necessary change.

21

The legal assistant expended 0.8 hours on the case to prepare the notice of the objection, review the objection prepared by the associate, and file them on the court's electronic case filing system. The last two items are secretarial matters and should not be separately billed by the legal assistant. Half of the requested time, 0.4 hours, will be allowed.

Attorney's fees in the amount of $1,675.00 and expenses of $3.15 will be allowed.

## Conclusion

The discussion of hourly rates and time expended is not a criticism of the attorneys' work product. Their work was well done and indicates a bright future for them in the practice of law. Nor is it a criticism of the firm's developmental and training program for younger associates which is commendable. It is simply a discussion of the appropriate fee for newer attorneys who are in the initial stages of obtaining bankruptcy experience.

The discussion is to determine the lodestar attorney's fee, that is, the reasonable hourly rate and the reasonable number of hours expended. As new attorneys, they will naturally expend more hours on matters than more experienced counsel will expend. The more experienced members of the bar have already learned what the newer attorneys are learning. In many instances, the lower hourly rate for newer attorneys is the only modification necessary. In some, the hours must also be reduced. The trustee could have hired any number of other experienced members of the bar of this court and achieved comparable results for the fees allowed today.

As for the division between trustee work and attorney work, the trustee needs to be more discerning in his fee applications. He may certainly continue to be a hands-off manger of

bankruptcy cases, but the attorneys who perform his work for him cannot be separately compensated.  Their time is part of the trustee's fee.

For the foregoing reasons, the legal fees and costs for the trustee's attorneys will be allowed as follows:

|  | Fees | Expenses |
|---|---|---|
| Troy Atsumu Parkins and Kerry Anne Pearce | $0.00 | $0.00 |
| Dong Kwon Choi | $0.00 | $0.00 |
| Majid Atash Sobh | $2,750.00 | $90.13 |
| Brandon J. Miller | $1,125.00 | $129.03 |
| Mohamad T. Kamara and Fatmata T. Kamara | $500.00 | $0.00 |
| Ilona K. Stephenson | $1,650.00 | $446.18 |
| Bonnie Keya | $1,675.00 | $3.15 |

Alexandria, Virginia
March 29, 2011

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

Copy electronically to:

H. Jason Gold
16546

23